IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

March 31, 2010

RE: TERRANCE LEWIS V. HARRY WILSON, ETAL
CA No. 05-4864

## NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Wells, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge.**

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By: /s/
LINDA V. JERRY, Deputy Clerk

cc: LAIGAIE
DOLGENOS
LORBER

Courtroom Deputy to Judge Schiller

civ623.frm
(11/07)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRANCE LEWIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HARRY WILSON, *et al.* | : | NO. 05-4864 |

## ORDER

AND NOW, this          day of                  , 2010, upon consideration of the Petition for Writ of Habeas Corpus, the Commonwealth's Response, inclusive of all exhibits thereto, the other documents filed by the parties, the state court record, and after review of the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. The Petition for Writ of Habeas Corpus is DISMISSED and DENIED without any further evidentiary hearing;

3. A certificate of appealability is GRANTED with respect to Ground Seven; and

4. Petitioner has not shown that reasonable jurists would disagree with this court's disposition of his other claims. Consequently, a certificate of appealability is DENIED with respect to Grounds On, Two and Three.

IT IS SO ORDERED.

BY THE COURT:

_____
R. BARCLAY SURRICK, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TERRANCE LEWIS : CIVIL ACTION
:
:
v. :
:
HARRY WILSON, *et al.* : NO. 05-4864

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                              March 30, 2010

## REPORT AND RECOMMENDATION

On August 6, 1996, when Terrance Lewis ("Petitioner") was only seventeen years old, Hulon Bernard Howard was shot once in the back and died. The police, based on information provided by Lena Laws, a crack-addicted witness who had smoked crack shortly before the shooting, identified Petitioner as a participant in the robbery that preceded Mr. Howard's senseless death. More than one year after the crime had occurred, the police arrested Petitioner, who along with his two co-defendants, Jimel Lawson and Jehmar Gladden, was tried jointly in May 1999. Petitioner was convicted of second degree murder and given the mandatory sentence in Pennsylvania of life imprisonment.[1]

Over the eleven years that have passed since his trial, evidence has gradually surfaced to demonstrate that Petitioner was not present at and did not participate in the robbery and death of Mr. Howard. This court conducted an evidentiary hearing on April 29, 2009; Kizzi Baker, a new witness, Tanisha Thorton, Petitioner's sister, Jehmar Gladden and Petitioner testified. Based upon credible testimony, the court believes that Petitioner may not have been present at or participated in

---

[1] Jimel Lawson was convicted of first-degree murder as the shooter; the jury declined to impose the death penalty and he was sentenced to life imprisonment. Jehmar Gladden was convicted of second-degree murder and sentenced to life imprisonment.

the tragic events of August 6, 1996; he may be actually innocent. However, as the court will explain, because of the process by which Petitioner sought relief in the state courts, the stringent requirements for relief imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the Supreme Court's failure to hold that habeas relief can be granted to one who is actually innocent based solely upon his non-guilt, Petitioner cannot obtain relief based upon any claim herein presented. Reluctantly, this court recommends that Petitioner be denied relief, without further hearings.

## I. BACKGROUND AND PROCEDURAL HISTORY[2]

The facts leading to Petitioner's arrest and conviction, as summarized by the Pennsylvania Superior Court,[3] are as follows:

> On the night of August 6, 1996, [Petitioner] and co-defendants Jimel "Mellow" Lawson (Lawson) and Jehmar "J.R." Gladden (Gladden) went to the home of Hulon Bernard Howard (the victim) to collect money the victim owed to Lawson for cocaine. [Petitioner] was armed with a shotgun, Lawson was armed with a handgun and Gladden was apparently unarmed. Present at the home were the victim, Lena Laws, a woman named Denise and a man named Omar.
> [Petitioner] and his two co-defendants proceeded to rob them at gunpoint. After searching them and taking $20.00 from Ms. Laws, Lawson asked the victim when he planned to pay him the money the victim owed for cocaine. After the victim said he would pay the next day, Lawson shot and killed the victim.

*Commonwealth v. Lewis*, No. 1842 EDA 1999, slip op. at 1-2 (Pa. Super. Ct. Nov. 15, 2000) ("Super. Ct. Dir. App. op.").

---

[2] The facts contained in this background and procedural history were gleaned from the Petition for Writ of Habeas Corpus, Petitioner's Initial Brief in Support, Petitioner's Supplemental Brief, the Commonwealth's Response to the Petition, the Commonwealth's Response to Petitioner's Supplemental Brief, the other documents filed by the parties, all exhibits attached to the parties' filings, and the state court record.

[3] This summary of the evidence supports Petitioner's conviction and it reveals the Commonwealth's theory of the case. The court does not endorse this summary to the extent that it represents that Petitioner was present at and implicated in Mr. Howard's death.

Petitioner was convicted of second degree murder, robbery and criminal conspiracy on May 24, 1999; he was sentenced to a life term of incarceration. *Commonwealth v. Lewis*, January Term 1998 No. 869, slip op. at 1 (Phila. Co. Dec. 22, 2006) ("Tr. Ct. PCRA op. II"). Represented by new counsel, *see* Pet. at 10, Petitioner appealed to the Pennsylvania Superior Court and his conviction and sentence were affirmed on November 15, 2000.[4] Tr. Ct. PCRA op. II at 1. Allowance of appeal ("*allocatur*") from the Pennsylvania Supreme Court was denied on April 16, 2001. *Id.* Petitioner did not seek *certiorari* from the United States Supreme Court.

Next, on January 30, 2002, Petitioner sought relief under Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46. Tr. Ct. PCRA op. II at 1. Court-appointed counsel filed an amended petition on March 18, 2002. *Id.* The PCRA court dismissed the entire petition on February 13, 2003 for lacking in merit. *Id.* at 1-2. The Superior Court affirmed on December 8, 2004, finding that none of Petitioner's claims had merit.[5] *Commonwealth v. Lewis*, No. 757 EDA 2003, slip op. at 2-7 (Pa. Super. Ct. Dec. 8, 2004) ("Super. Ct. PCRA. op. I"). On August 11, 2005, the Pennsylvania Supreme Court denied *allocatur*. Tr. Ct. PCRA op. II at 2. Petitioner did not seek *certiorari* from the United States Supreme Court.

On September 2, 2005, Petitioner filed his second PCRA petition. Tr. Ct. PCRA op. II at 2. Counsel was appointed and filed an amended petition on May 23, 2006. *Id.* On August 18, 2006, the PCRA court gave Petitioner notice of its intent to dismiss the PCRA petition on the ground that

---

[4]Petitioner argued that: (1) trial counsel was ineffective for failing to seek suppression of testimony concerning Petitioner's alleged prior sale of narcotics; and (2) the trial court abused its discretion by denying the jury's request to see the police diagram of the house where the crime occurred and to read back a portion of Ms. Laws' testimony. Super. Ct. Dir App. op. at 2.

[5]Petitioner argued that direct appellate counsel had been ineffective for failing to allege that trial counsel had been ineffective for failing to: (1) request that the trial court dismiss a juror for falling asleep during the trial; (2) call as witnesses two detectives who would have testified whether Ms. Laws had made a "fifth statement" to the police; and (3) call Police Sergeant Mariano Maddela to testify that, on the night of the shooting, Ms. Laws had made a statement which contradicted her trial testimony. *Commonwealth v. Lewis*, No. 757 EDA 2003, slip op. at 4-5 (Pa. Super. Ct. Dec. 8, 2004).

-3-

it was untimely. *Id.* Petitioner, through counsel, timely objected on August 25, 2006 but the court dismissed the PCRA petition on September 21, 2006. *Id.* Petitioner, through counsel, then appealed to the Superior Court. *Id.* On November 10, 2006, the PCRA court ordered Petitioner to file a statement of matters complained of on appeal pursuant to Pa. R. App. P. 1925(b). *Commonwealth v. Lewis*, No. 3020 EDA 2006, slip op. at 3 (Pa. Super. Ct. Nov. 14, 2007) ("Super. Ct. PCRA. op. II"). On November 14, 2007, the Superior Court concluded that Petitioner had failed to file the required statement of matters, *id.* at 3-4, and, as a result, had waived all appellate issues.[6] *Id.* at 2-7. On April 29, 2008, the Pennsylvania Supreme Court denied *allocatur*. *Commonwealth v. Lewis*, 948 A.2d 803 (Pa. 2008) (table). Petitioner did not seek *certiorari* from the United States Supreme Court.

The instant petition for federal habeas corpus relief was filed on September 12, 2005 and the brief in support hereof on October 13, 2005. In the petition and brief, Petitioner raised claims that: (1) direct appellate counsel was ineffective for failing to argue that trial counsel had been ineffective for failing to subpoena Police Sergeant Mariano Maddela to testify for the defense; (2) direct appellate counsel was ineffective for failing to argue that trial counsel had been ineffective for failing to call Detectives Kane and Hughes to testify that Ms. Laws had not, in fact, given them an additional statement which was consistent with her trial testimony concerning how many times she had seen Petitioner prior to the day of the crime; (3) direct appellate counsel was ineffective for failing to argue that trial counsel had been ineffective for failing to seek removal of a juror who fell asleep during the trial; and (4) newly discovered evidence, an affidavit from co-defendant Gladden, exonerates Petitioner. Pet. at 9, 1-7 (reverse); Pet'r's Br. at 5, 7-28. In his May 19, 2008

---
[6]Petitioner sought to raise claims that the PCRA court had erred in dismissing his petition as untimely because: (1) he had timely presented a claim of "after discovered evidence," and (2) his plausible claim of actual innocence should never be time-barred. Super. Ct. PCRA op. II at 2.

Supplemental Brief, Petitioner claims that: (5) new evidence (the affidavits of Gladden and Kizzi Baker) establishes his actual innocence, thereby excusing the procedural default of his habeas claims; (6) the state courts erred in determining that his actual innocence claim had been untimely presented in his second PCRA petition; and (7) trial counsel rendered ineffective assistance by failing to conduct any pre-trial investigation, which would have uncovered the exonerating testimony of Kizzi Baker. Pet'r's Supplemental Brief ("Pet'r's Supp. Br.") at iii, 5-17.

## II. DISCUSSION

### A. Non-Cognizable Claim - Alleged State Court Error in Finding that Second PCRA Petition was Untimely - Ground Six

Habeas relief is only available for violations of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). Consequently, claims based upon state law are not cognizable. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Further, habeas review concerns only proceedings that resulted in the petitioner's conviction, not errors that arose during state collateral proceedings. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998). For this reason, claims premised upon delay, or other problems encountered obtaining state collateral relief, are inappropriate grounds for granting habeas relief. *See id.* Inasmuch as Ground Six is based on alleged state courts error in applying the PCRA timeliness requirement, it is not cognizable and should be dismissed without review. *See Hassine*, 160 F.3d at 954.

### B. Exhaustion and Procedural Default

#### 1. Basic Principles

A habeas petitioner must exhaust state court remedies before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). The traditional way to exhaust state court remedies in Pennsylvania was

to fairly present a claim to the trial court, the Pennsylvania Superior Court and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1230 (3d Cir. 1992). However, in light of a May 9, 2000 order of the Pennsylvania Supreme Court, it is no longer necessary for Pennsylvania inmates to seek allowance of appeal from the Pennsylvania Supreme Court in order to exhaust state remedies. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

If a habeas petitioner has presented his claim to the state courts but the state courts have declined to review the claim on its merits because the petitioner failed to comply with a state rule of procedure when presenting the claim, the claim is procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 262-63 (1989). When a state court has declined to review a claim based on a procedural default and the claim is not later addressed on the merits by a higher court, the habeas court must presume that the higher state court's decision rests on the procedural default identified by the lower state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Finally, when a habeas petitioner has failed to exhaust a claim and it is clear that the state courts would not consider the claim because of a state procedural rule, the claim is procedurally defaulted.[7] *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Procedurally defaulted claims cannot be reviewed unless "the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750. In order to demonstrate cause, the petitioner must show that

---

[7] A common reason the state courts would decline to review a claim that has not been presented previously is the expiration of the statute of limitations for state collateral review. *See Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001).

"some objective factor external to the defense impeded [the petitioner's] efforts to comply with the state's procedural rule." *Id.* at 753 (citation omitted). Examples of cause include: (1) a showing that the factual or legal basis for a claim was not reasonably available; (2) a showing that some interference by state officials made compliance with the state procedural rule impracticable; (3) attorney error that constitutes ineffective assistance of counsel. *Id.* at 753-54.

The fundamental miscarriage of justice exception is limited to cases of "actual innocence." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). In order to demonstrate that he is "actually innocent," the petitioner must present new, reliable evidence of his innocence that was not presented at trial.[8] *Id.* at 316-17, 324. The court must consider the evidence of innocence presented along with all the evidence in the record, even that which was excluded or unavailable at trial. *Id.* at 327-28. Once all this evidence is considered, the petitioner's defaulted claims can only be reviewed if the court is satisfied "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

### 2. Ground Seven - Trial Counsel was Ineffective for Failing to Investigate and Present Testimony from Kizzi Baker- is Procedurally Defaulted

Petitioner failed to present Ground Seven on direct appeal or in his first PCRA petition. *See supra* 3 & nn.4-5. He did raise it in the May 23, 2006 memorandum of law PCRA counsel filed in support of the amended, second PCRA petition. *See* Respondent's Motion to Supplement Record, Exhibit A (Memorandum of Law) at 7-9. However, Petitioner failed to include this claim of trial counsel's ineffective assistance in his PCRA appeal. *See supra* 4 & n.6. As such, the claim is unexhausted and, because the PCRA statute of limitations expired for the claim on May 24, 2006,

---

[8] This evidence need not be directly related to the habeas claims the petitioner is presenting, because the habeas claims themselves need not demonstrate that he is innocent. *See Schlup*, 513 U.S. at 315.

he cannot exhaust the claim *via* a third PCRA petition.[9] Thus, this unexhausted claim is procedurally defaulted.[10] *See Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001).[11] Petitioner asserts that his actual innocence excuses the default *via* Grounds Four and Five.[12]

Petitioner maintains that the proposed testimony of Ms. Baker and Mr. Gladden (as reflected in their affidavits) demonstrates that he did not enter the victim's home on August 6, 1996 and, therefore, could not have participated in the events which caused the victim's death. Co-defendant Gladden admitted that he was present at the August 6, 1996 robbery and homicide of Mr. Howard. *See* Affidavit of Jehmar Gladden at 1.[13] He averred that Petitioner was not present at that location

---

[9] Since Petitioner did not seek *certiorari* in the United States Supreme Court on direct appeal, his conviction became final on July 16, 2001, ninety days after the Pennsylvania Supreme Court denied *allocatur* on April 16, 2001. *See* 42 Pa. Cons. Stat. Ann. § 9545(b)(3); Sup. Ct. R. 13(1). If this were the appropriate starting date for the defaulted claim, the PCRA statute of limitations would have expired for it on July 16, 2002. *See* 42 Pa. Cons. Stat. Ann. § 9545(b)(1). However, Petitioner's defaulted claim is based on new evidence, which suggests a later starting date. *See* 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(ii). According to Petitioner, the new evidence (Kizzi Baker's proposed testimony) was discovered on March 24, 2006. *See* Pet'r's Supp. Br. at 6. The PCRA requires that a new evidence claim be filed within 60 days of discovery, *see* 42 Pa. Cons. Stat. Ann. § 9545(b)(2), hence, the Ground Seven had to be filed by May 24, 2006. *Id.*

[10] The Commonwealth argues that Ground Seven is time-barred. *See* Post-Hearing Response to Petition for Writ of Habeas Corpus ("Commw. Resp.") at 12-18. The court disagrees. Petitioner did not learn of Ms. Baker's proposed testimony until shortly after his sister spoke to her on March 24, 2006. Thereafter, through PCRA counsel, he obtained her affidavit and submitted it in support of his amended PCRA petition on May 23, 2006. *See* Commw. Resp. at 3. This demonstrates diligence. Petitioner informed this court on February 5, 2007 that he wanted to supplement his habeas petition to include this claim. *See* Document No. 20. On February 12, 2007, this court granted his request. Document No. 22. Once his state court proceedings ended on April 29, 2008, Petitioner filed his supplemental brief on May 12, 2008, adding the new claim. *See* Commw. Resp. at 4. In light of this history, the statute of limitations for this claim should have begun, based on 28 U.S.C. § 2244(d)(1)(D), on March 24, 2006, when Petitioner's sister learned the new evidence, completely by chance. After that point, Petitioner informed this court of the claim within one year and the court told him he should defer adding the claim until after his state court proceedings ended. *See* Document No. 22. He did so within the thirty day deadline this court had imposed upon him previously. *See* Document No. 15. In light of this history, Ground Seven has been timely raised.

[11] Even if Ground Seven had been included in the PCRA appeal, since the Superior Court concluded that Petitioner had waived all appellate issues due to counsel's failure to file the required statement of matters complained of on appeal, *see* Super. Ct. PCRA op. II at 2-7, Ground Seven would be procedurally defaulted.

[12] Petitioner does not argue that his asserted actual innocence is a substantive claim for habeas relief. Were he to do so, the court could not consider said claim because the Supreme Court has explained that free-standing claims of innocence (i.e., ones that do not assert an independent constitutional violation in the underlying state criminal proceeding) do not state a ground for habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400-01, 404 (1993). The Court, however, has only assumed an exception to this rule and opined that the execution of one who is actually innocent would be unconstitutional. *Id.* at 417. Because Petitioner is not subject to the death penalty, this assumed constitutional right is inapplicable.

[13] A copy of Mr. Gladden's affidavit is attached as Exhibit M to Petitioner's Supplemental Brief.

and, hence, did not participate in the robbery or victim's death. *Id.* Mr. Gladden further explained that he told his trial counsel that Petitioner was innocent but was advised that revealing this information would incriminate him, where the Commonwealth had "no case" against him, and would contradict his intended trial defense. *Id.* at 2. Mr. Gladden states that he is willing to testify that Petitioner was not involved in the crime. *Id.*

Kizzi Baker lived near the victim's home on August 6, 1996; she was standing on the corner of 61st and Samson Streets and could see the victim's house at the time of the crime. *See* Affidavit of Kizzi Baker at 1.[14] Ms. Baker stated that, first, she saw two teenage males park their car near the victim's home and then enter the home; a few minutes later, she saw a third man walk past her and enter the home. *Id.* About ten minutes later, she heard a gunshot from the vicinity of the victim's home and turned to look in that direction. *Id.* She saw the victim's screen door open and the first two men run out of the house, enter their car, and drive away. *Id.* The third man then exited the house alone; he walked past her. *Id.* Next, Ms. Baker saw the victim's girlfriend, Lena Laws, exit the home, running and screaming. *Id.* Finally, she saw a middle-aged man and woman, who she did not recognize, run out of the victim's home. *Id.* at 2. Ms. Baker further stated that she knew Petitioner in August 1996 because he dated her neighbor and was often in her neighborhood. *Id.* She stated unequivocally that Petitioner was not at the crime scene. *Id.* Ms. Baker further stated that, at the time of the crime, she did not approach the police because she was pregnant and fearful that something might happen to her since she lived near the crime scene. *Id.*

These affidavits, if true, certainly would exculpate Petitioner because they indicate that he did not participate in the charged offenses. Specifically, they contradict the testimony of Lena Laws

---

[14] A copy of Ms. Baker's affidavit is Exhibit J to Petitioner's Supplemental Brief.

– the only eyewitness to the crime who testified at trial – who had identified Petitioner as the man who had entered the victim's house armed with a shotgun and directed co-defendant Gladden to search her, Omar, and Denise for money, before co-defendant Lawson shot the victim. (N.T. 5/17/99 at 64-73). The affidavits constitute new evidence because they were not available at the time of trial.[15]

To assess the reliability of these affidavits, the court conducted an evidentiary hearing on April 29, 2009.[16] At that hearing, Ms. Baker, (N.T. 4/29/09 at 6-65), and Mr. Gladden, *id.* at 78-128, testified credibly and consistently with their prior affidavits. Ms. Thornton corroborated Ms. Baker's explanation of how they met and what they discussed concerning Petitioner's innocence. *Id.* at 66-71. In addition, Petitioner testified that he was not inside Mr. Howard's home on the night of the shooting and, hence, could not have participated in the robbery and shooting.[17] *Id.* at 134, 156. Petitioner also testified that, prior to being arrested for Mr. Howard's shooting, he had no criminal history. *Id.* at 135-36. The court found the testimony of these witnesses to be credible, hence, the

---

[15]The Commonwealth contends that co-defendant Gladden's proposed testimony is not new evidence because he could have testified at trial and, like Frank Hubbard in *Hubbard v. Pinchak*, 378 F.3d 333 (3d Cir. 2004), Petitioner simply chose to omit this testimony at trial. *See* Response to Pet'r's Supplemental Brief at 16-17. The Commonwealth's citation to *Hubbard* is inapposite because, in *Hubbard*, the purported new evidence was Hubbard's own testimony, which he could control at trial. *See Hubbard*, 378 F.3d at 340. By contrast, Petitioner could not compel co-defendant Gladden to testify at his trial because Gladden had a Fifth Amendment right not to incriminate himself and, in his affidavit, Gladden explains that his trial counsel advised him to keep silent concerning Petitioner's innocence because admitting presence in the house implicated his own guilt and, therefore, was against his own interest and inconsistent with his attorney's trial strategy.

[16]On December 17, 2008, the court appointed David M. Laigaie, Esquire to represent Petitioner, as is required when an evidentiary hearing is to be held. *See* Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts. Mr. Laigaie has diligently and zealously advocated Petitioner's cause, in the finest tradition of the bar. The court appreciates his work in this matter and, should this court's decision be affirmed on appeal, hopes that Mr. Laigaie will continue to represent Petitioner in clemency proceedings before the Governor of Pennsylvania.

[17]Petitioner also testified that trial counsel informed him during the trial that the Commonwealth had offered him a plea bargain in this case to serve no more than ten years, if he testified against Mr. Lawson. (N.T. 4/29/09 at 150). Petitioner told trial counsel to reject this offer because he was not at Mr. Howard's home on the night of the crime, hence, he could not testify about what had happened. *Id.* at 150-51. Trial counsel has submitted an unsworn declaration wherein he confirms that the Commonwealth had offered Petitioner a deal if he would testify against Mr. Lawson, but that Petitioner rejected the plea, stating that he was innocent. Supplemental Post-Hearing Submission in Support of Terrance Lewis' Petition for Writ of Habeas Corpus, Exhibit C at [2].

court believes that Petitioner is innocent. Moreover, in the court's view, in light of the new evidence Petitioner presented at the April 29, 2009 hearing, it is more likely than not that no reasonable juror would have convicted Petitioner. Accordingly, his procedural default is excusable. *See Schlup*, 513 U.S. at 329.

On November 30, 2009, Petitioner's habeas counsel submitted a one-page statement from Jimel Lawson. Supplemental Post-Hearing Submission in Support of Terrance Lewis' Petition for Writ of Habeas Corpus ("Pet'r's First Supp. Sub."), Exhibit E. In this statement, Mr. Lawson said he does not know Petitioner and Petitioner did not sell drugs with him; he first met Petitioner at approximately the time of their joint trial for Mr. Howard's death, and he has not had contact with Petitioner or Mr. Gladden since they were incarcerated in 1997. *Id.* Mr. Lawson's statement is clearly exculpatory as it refutes Ms. Laws' trial testimony that Petitioner had sold drugs with Messrs. Lawson and Gladden out of Mr. Howard's home on 50 occasions prior to Mr. Howard's death, (N.T. 5/17/99 at 52, 139), and that Petitioner was present at the shooting. *Id.* at 46. Were Mr. Lawson to testify at a future hearing in a manner consistent with his recent statement, the court's conclusion that Petitioner is innocent would be reinforced and Petitioner's ability to satisfy the *Schlup* standard would increase. However, as will be explained *infra* Section II(B)(3), Petitioner is barred from having a hearing concerning the merits of this ineffective assistance of counsel claim, thus, it would be futile to conduct further hearings concerning his actual innocence.[18]

### 3. Availability of a Hearing Concerning the Merits of Ground Seven

Ground Seven alleges that trial counsel rendered ineffective assistance for failing to find Ms.

---

[18]Petitioner is barred from having an evidentiary hearing on the merits of his claim by 28 U.S.C. § 2254(e)(2). This provision does not bar an evidentiary hearing on his assertion of actual innocence to excuse his procedural default. *See Cristin v. Brennan*, 281 F.3d 404, 412-19 (3d Cir. 2002). Nonetheless, since Petitioner is barred from having an evidentiary hearing on the merits of his claim and, without a hearing, he cannot prevail, it is futile to have an additional hearing that might allow further proof of his innocence.

Baker prior to trial and present her testimony at trial. Pet'r's Supp. Br. at iii, 8-9. Claims of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In short, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

Second, the petitioner must show that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. That is, the petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.* at 694, but it is less than a preponderance of the evidence. *Id.* at 693, 694.

If the petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail. *Id.* at 697. Further, counsel will not deemed to be ineffective for failing to present an unmeritorious claim or objection. *Parrish v. Fulcomer*, 150 F.3d 326, 328-29 (3d Cir. 1998); *Moore v. Deputy Commrs. of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991).

Because trial counsel's performance is entitled to a presumption of effectiveness, and since

trial counsel is available to testify, Petitioner cannot carry his burden to rebut the presumption of effectiveness based on the alleged lack of investigation without an evidentiary hearing. *See Thomas v. Horn*, 570 F.3d 105, 125 (3d Cir. 2009). Under the AEDPA, Petitioner may not have an evidentiary hearing concerning the merits of his claim if he failed to develop the factual basis for his claim in prior state court proceedings.[19] *See* 28 U.S.C. § 2254(e)(2). In order to "fail" to develop the factual basis for his claim, there must be a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). If a petitioner requests an evidentiary hearing concerning his counsel's strategic choice, and the state court declines to conduct a hearing, the petitioner is usually not at fault and a habeas hearing may be held. *See Thomas v. Varner*, 428 F.3d 491, 498 (3d Cir. 2005). However, a request for a state evidentiary hearing does not constitute diligence if the petitioner has failed to support his state court request with available reliable evidence to support his claim. *See Lewis v. Horn*, 581 F.3d 92, 104 n.7 (3d Cir. 2009). It is the diligence requirement that Petitioner cannot satisfy, hence, the court concludes that, despite requesting an evidentiary hearing for his second PCRA petition, he "failed" to develop the factual basis for his claim and cannot obtain an evidentiary hearing on the merits of Ground Seven.

While Petitioner's second PCRA petition was pending, he discovered part of the factual basis for Ground Seven on March 24, 2006, when his sister, Tanisha Thornton, had a chance encounter with Ms. Baker. (N.T. 4/29/09 at 68-69). Ms. Baker executed an affidavit concerning the favorable evidence she could provide on May 4, 2006. Affidavit of Kizzi Baker at 1-2. PCRA counsel filed

---

[19]If a habeas petitioner has failed to develop the factual basis for his claim in the state courts, there are exceptions which would allow the petitioner to have a federal hearing. *See* 28 U.S.C. § 2254(e)(2)(A)-(B). Despite recently filing a brief concerning the availability of a habeas hearing concerning Ground Seven, Petitioner's counsel has failed to argue that he can satisfy the exceptions. *See* Second Supplemental Post-Hearing Submission in Support of Terrance Lewis' Petition for Writ of habeas Corpus at 1-3. Hence, the court concludes that he cannot.

an amended PCRA petition along with Ms. Baker's affidavit on May 23, 2006. *See* Respondent's Motion to Supplement Record, Exhibit A. In his memorandum of law, PCRA counsel requested an evidentiary hearing at which Ms. Baker, Ms. Thornton and Mr. Gladden could testify. *See id.*, Memorandum of Law at 15. However, PCRA counsel did not request that trial counsel testify at the hearing. No hearing was in fact held because the PCRA court dismissed the PCRA petition as untimely. Tr. Ct. PCRA op. II at 2. Petitioner appealed, without raising Ground Seven, and his appeal was deemed waived because counsel had failed to properly file the statement of matters complained of on appeal. Super. Ct. PCRA. op. II at 2-7.

Petitioner, through his counsel, exhibited a lack of diligence in several regards. First, PCRA counsel failed to request that trial counsel testify at a PCRA hearing. This was fatal because, although Ms. Baker could provide evidence concerning *Strickland* prejudice, she could not provide any evidence concerning whether trial counsel's performance was deficient. Instead, trial counsel had the crucial evidence concerning that component of *Strickland*. *See Thomas v. Horn*, 570 F.3d at 125. Although present counsel has obtained an unsworn statement from trial counsel which addresses the performance prong of *Strickland*, *see* Pet'r's First Supp. Sub., Exhibit C, PCRA counsel did not. PCRA counsel's failure to do so – no doubt stemming from his complete failure to request trial counsel's testimony at a PCRA hearing – also demonstrates a lack of diligence. *See Lewis v. Horn*, 581 F.3d at 104 n.7. Further, although not directly related to the failure to obtain a hearing, PCRA counsel's subsequent failure to include Ground Seven in the Superior Court appeal and his failure to file the required statement of matters complained of on appeal further demonstrate a lack of diligence.

Because Petitioner is barred by § 2254(e)(2) from having an evidentiary hearing on the merits